# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| DAMAIN KEREK | CIVIL ACTION |
|---|---|
| VERSUS | NO. 18-76-RLB |
| CRAWFORD ELECTRIC SUPPLY COMPANY, INC. | CONSENT CASE |

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff's Motion for Partial Summary Judgment (R. Doc. 25) filed on March 15, 2018. The motion is opposed. (R. Doc. 38). Plaintiff has filed a Reply. (R. Doc. 53).

**I.     Background**

On or about December 28, 2017, Damain Kerek ("Plaintiff" or "Kerek") filed a claim against Crawford Electric Supply Company, Inc. ("Defendant" or "Crawford") for wages that were allegedly owed to him under Crawford's 2016 Bonus Plan. (R. Doc. 1-1 at 3-7, "Petition"). Crawford subsequently removed the action on the basis that there is diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1).

Kerek alleges that he was employed by Crawford as a Branch Manager from August 2013 until his unexpected termination on January 6, 2017, and that throughout his employment he participated in an annual "Bonus Plan" under which he generally received "around 30% or more of his total annual compensation." (Petition ¶¶ 3-4). Kerek further alleges that he worked the entirety of the 2016 Bonus Plan's performance year, which began on January 1, 2016 and expired on December 31, 2016, making him eligible to receive payment of his wages under the 2016 Bonus Plan. (Petition ¶ 5).

Plaintiff submits, under seal, an unsigned copy of the 2016 Bonus Plan. (R. Doc. 26). In relevant part, the document provides the following:

- Bonus plan is effective 1/1/2016 and expires on 12/31/2016; and
- Bonus calculations will be based on regular wages PAID in 2016; and
- Bonus payments will be made after final audited numbers are released and Board approval has been received, but no later than [the] end of the 1st quarter following the performance year; and
- All participants must be actively employed at the time the bonuses are paid to be eligible to receive a payout.

(R. Doc. 26). The document does not provide any specific criteria, such as employee misconduct, that would preclude payment of a bonus.

The Petition further alleges that Kerek's employment was terminated and Crawford presented Kerek with a document titled "Severance Agreement and Release of Claims," which offered Kerek a severance payment in exchange of a release of all claims he may have against Crawford, including any payment under the 2016 Bonus Plan and certain restrictions on post-employment activity. (Petition ¶¶ 8-9). Kerek alleges that he rejected the offer, and, on or around February 8, 2017, made a formal demand for all wages owed to him. (Petition ¶¶ 10-11). Kerek alleges that Crawford "refused to pay the wages owed to Kerek under the 2016 Bonus Plan" based on the provision in the Bonus Plan requiring participants to be "actively employed at the time the bonuses are paid to be eligible to receive a payout." (Petition ¶ 12).[1]

On May 10, 2018, Kerek filed the instant Motion for Partial Summary Judgment, which seeks a ruling declaring that the provision of the Bonus Plan requiring active employment at the time of payout is unenforceable as against public policy and is in violation of the Louisiana

---

[1] Kerek further alleges that Crawford later advised him that it was refusing payment under the 2016 Bonus Plan because Kerek "did not meet the sales numbers and expectations of the Plan." (Petition ¶ 14). Whether Crawford properly refused to make payment on the foregoing basis is not an issue currently before the Court.

Wage Payment Act ("LWPA"), La. R.S. 23:631, *et seq*. (R. Doc. 25). In short, Kerek argues that because the incentive-based bonus is considered "wages" under La. R.S. 23:634, he "earned" his bonus by meeting the defined financial targets between January 1, 2016 and December 31, 2016, and, accordingly, the forfeiture provision in the 2016 Bonus Plan is unenforceable under Louisiana law. (R. Doc. 25-1 at 5-9).

In opposition, Crawford first argues that Kerek's motion should be denied because "a signed version of the 2016 Bonus Plan does not exist or cannot be located," Kerek "cannot prove that he accepted or agreed to the terms of the plan," and certain statements of "fact" in support of the motion should be ignored for lack of proper evidentiary foundation. (R. Doc. 38 at 2-4). Second, Crawford argues that summary judgment should be denied because there is a factual dispute regarding whether Kerek was terminated for "cause," which has bearing on the enforceability of the provision at issue. (R. Doc. 38 at 4-8). Finally, Crawford argues that Kerek's reliance on La. R.S. 23:634 is misplaced because that provision only applies to signed contracts, and, as stated above, a signed contract has not been produced in this action. (R. Doc. 38 at 9-10).

In reply, Kerek asserts that there is no authority in support of Crawford's positions, which are premised on misreading of the applicable legal authorities. (R. Doc. 53).

## II. Law and Analysis

### A. Legal Standards for Summary Judgment

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with

"specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

Furthermore, only evidence that is competent, or admissible, may be used to support summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "'[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Serna v. Law Office of Joseph Onwuteaka*, P.C., 614 F. App'x 146, 153 (5th Cir. 2015) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

**B.  Analysis**

As a preliminary matter, the Court acknowledges that there is a dispute as to whether there is a binding agreement between the parties regarding the payment of a bonus to Kerek.[2]

---

[2] Under Louisiana law, there are four elements for a valid contract: (1) capacity to contract; (2) mutual consent; (3) a lawful cause; (4) and an object that is lawful, possible, and determined or determinable. *Granger v. Christus Health Cent. La.*, 144 So.3d 736, 760-61 (La. 2013); *see also* La. Civ. Code arts. 1918, 1927, 1966, 1971. The term "cause" in the context of Louisiana contract law is defined as "the reason why a party obligates himself." La. Civ. Code arts. 1966, 1967.

The version of the Bonus Plan filed into the record under seal does not contain any signatures. (R. Doc. 26). The Court finds no basis to defer ruling on the instant motion, however, in light of Crawford's arguments that there is a genuine issue of material fact regarding whether there was a "meeting of the minds" between the parties regarding the 2016 Bonus Plan. (R. Doc. 38 at 2). That the 2016 Bonus Plan is unsigned has no bearing on the issues raised by Kerek in the instant motion, namely whether the forfeiture provision is unenforceable in violation of public policy. *See Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*, 707 So. 2d 1233, 1225 (La. 1998) (providing that the antiforfeiture provisions of La. R.S. 23:634 apply even where the employee did not sign a contract providing that she would forfeit her wages if she resigned before the end of the contract period).

In support of summary judgment, Kerek relies on La. R.S. 23:634, which provides the following:

> "No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages **actually earned up to the time of their discharge or resignation**." La. R.S. 23:634.

La. R.S. 23:634 (emphasis added). Also relevant to the claims and defenses in this action is La. R.S. 23:631, which provides, in relevant part, the following:

> Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the **amount then due under the terms of employment**, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.")

La. R.S. 23:631 (emphasis added). "Whether a bonus constitutes earned wages (or 'amounts then due') under the LWPA is a mixed question of law and fact." *Wiggins v. Coast Prof'l, Inc.*,

No. 14-0002, 2015 WL 692921, at *8 (W.D. La. Feb. 18, 2015) (citing *Batiansila v. Advanced Cardiovascular Systems, Inc.*, 952 F.2d 893 (5th Cir. 1992)).

In the seminal forfeiture clause case, the Louisiana Supreme Court stated that "[t]he enforceability of the forfeiture and non-vesting clauses, where the employee resigns or is discharged for cause, is justified in the light of the purposes and respective causes or motives of the parties in making a contract" for payment of supplemental compensation. *Morse v. J. Ray McDermott & Co., Inc.,* 344 So.2d 1353, 1358 (La. 1976). In light of the principles provided by La. R.S. 23:634, as well as various Louisiana Civil Code articles, the Court nevertheless held that the "forfeiture and non-vesting clauses" before it, which provided that all unpaid awards were forfeited if employment was terminated for reasons other than death, disability, or retirement, were "manifestly unjust, contrary to public order and public policy, and unenforceable, if sought to be applied in a circumstance where, by the unilateral act of the employer, the employee is prevented from performing his part of the bargain to complete vesting of deferred compensation benefits." *Id*. In reaching this decision, the Court made it clear that the employer-defendant had terminated the plaintiff's employment "without cause," and therefore the employee was entitled to any deferred compensation benefits. *Id*. at 1368.

The Fourth Circuit Court of Appeal of Louisiana extended the holding of *Morse* to apply to circumstances in which employment is terminated for employee misconduct. *See Pender v. Power Structures, Inc.*, 359 So.2d 1321 (La. Ct. App. 4th Cir. 1978). In *Pender*, the employer was obligated by contract to pay certain bonuses based on profits calculated quarterly and payable within thirty days of the end of the bonus period, so long as the employee was employed at the time of payment. *Id*. at 1322. The day after the end of the employer's fiscal year, and prior to payment of any bonuses, the employer involuntarily terminated the plaintiffs' employment

6

"because they were planning to begin their own business in competition" with the employer. *Id*. The Court held that "the requirement of continued service in this particular bonus plan is unenforceable as against public policy, and plaintiffs are accordingly entitled to collect the bonuses which constituted part of the compensation promised to them for services performed during the bonus period." *Id*. at 1323; *see also Draughn v. Breaux Mart*, 411 So.2d 1188 (La. Ct. App. 4th Cir. 1982), *writ denied* 415 So. 2d 944 (La. 1982) (employee entitled to recover value of already-earned accrued vacation benefits even where he was fired for "poor performance"); *Kaplon v. Rimkus Consulting Grp., Inc. of Louisiana*, 39 So. 3d 725, 737 (La. Ct. App. 4th Cir. 2010), *writ denied sub nom. Kaplon v. Rimkus Consulting Grp., Inc.*, 39 So. 3d 587 (La. 2010) (requirement that an employee must be employed at the time a bonus is actually paid in order to be eligible for the payment of the bonus was invalid and violated La. R.S. 23:634, even where an employee left to go into competition with the employer).

In *Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*, 707 So. 2d 1233 (La. 1998), the Louisiana Supreme Court similarly held that an employer's wage forfeiture policy, which provided that an employee would forfeit all "accrued" benefits if that employee "abandoned" his or her position, including the unused vacation pay at issue, was unenforceable in light of La. R.S. 23:634. In *Beard*, however, there was no dispute that the unused vacation pay at issue had been accrued, and that the plaintiff had voluntarily resigned from employment with no allegations of wrongdoing in violation of an employment contract. The Louisiana Supreme Court has not adopted the reasoning in *Pender*, and its extension of *Morse*. Indeed, the sole reliance on *Pender* by the Louisiana Supreme Court was in a dissenting opinion. *See Foshee v. Georgia Gulf Chemicals & Vinyls, L.L.C.*, 42 So. 3d 346 (La. 2010) (affirming ruling that there was no genuine issue of material fact that a profit-sharing distribution was not an "amount then due"

7

under La. R.S. 23:631 where it was a discretionary motivational program subject to change, with Justice Knoll stating in dissent that the result was "directly contrary to Louisiana's unpaid wages act, which does not permit an employer to require an employee to forfeit unpaid wages for any reason, even alleged incompetence.").

Other decisions have focused their analysis on whether the employee has "actually earned" the bonus payments at issue by having been employed throughout the employment period giving rise to the bonus payment. Indeed, the Fourth Circuit has clarified that the holding in *Pender* was premised on the fact that the employees had "earned" their bonuses at the time of their discharge, as they were terminated after the incentive payments "had accrued" during the bonus period. *Hinton v. Owensby & Kritikos, Inc.*, 425 So. 2d 926, 929 (La. Ct. App. 4th Cir. 1983) (upholding forfeiture clause where employee was terminated "prior to the end of the fiscal period which would have given rise to his incentive compensation" for attempting to persuade co-employees to work for a competitor company). Consistent with the foregoing, the Eastern District of Louisiana has noted that "when Louisiana courts uphold continued employment conditions, it is generally because some part of performance on the part of the employee, in addition to mere continued employment, is still due." *Thorne v. Bard Peripheral Vascular, Inc.*, No. 16-0262, 2016 WL 3746148, at *7 (E.D. La. July 13, 2016) (denying motion to dismiss where the plaintiff "pled facts sufficient to allow the Court to reasonably infer that the [bonus at issue] was actually earned in November 2014, rather than at the time of payout" and that it was "plausible that the condition requiring recipients to be employed . . . at the time of payout amounts to an impermissible forfeiture clause."); *see also Avila v. Sanofi-Aventis*, 90 So. 3d 1132 (La. Ct. App. 5th Cir. 2012) (upholding continued employment provision because the bonus payment was also conditioned on acceptable performance throughout the vesting period); *Steak*

8

*v. Hat World, Inc.*, 191 So. 3d 712, 717 (La. Ct. App. 4th Cir. 2016) (upholding a continued employment provision because that specific incentive program stipulated that employees would be eligible to receive a bonus only if they were "employed and in good standing at the time of payout"); *cf. Wiggins v. Coast Prof'l, Inc.*, No. 14-0002, 2015 WL 692921, at *9 (W.D. La. Feb. 18, 2015) (denying motion for leave to amend the complaint to add LWPA claim as futile where bonus plan provided that the bonus "was not earned until pay out and that an employee must be employed on the date of pay out to receive the bonus.").

The issue raised by Kerek in the instant motion for partial summary judgment is a narrow one. Kerek seeks a ruling that "the provision in Crawford Electric Company, Inc.'s bonus plan that requires an employee, who works the entire bonus period, to be employed by the company when the bonus is paid out the following year, is illegal, violates Louisiana public policy and is not enforceable." (R. Doc. 25 at 1). There is no dispute that Kerek was employed for the full duration of the performance period for the 2016 Bonus Plan. There is no language in the 2016 Bonus Plan (or any other document proffered by Crawford in opposition to the instant motion) indicating that a bonus for the 2016 performance period is not "earned" until it is paid. Given the foregoing, the Court agrees with Kerek that, as written, the provision in Crawford's 2016 Bonus Plan stating that "[a]ll participants must be actively employed at the time the bonuses are paid to be eligible to receive a payout" is unenforceable as a matter of public policy.

That said, there does remain a genuine issue of material fact regarding whether Kerek was terminated for misconduct or other cause that occurred during the performance period. Crawford has submitted certain documents in the record, filed under seal, documenting the basis for Kerek's termination. (R. Doc. 38 at 8). The parties' dispute regarding whether Kerek was filed for "cause" does not, however, preclude granting summary judgment on the narrow issue

9

raised by the instant motion. For one thing, it remains unclear whether Kerek entered into an employment contract for a fixed term, which may be relevant for a determination of whether termination for alleged misconduct during the 2016 Bonus Plan has any bearing on a determination of whether Kerek is entitled to any portion of the bonus at issue.[3] Resolution of the instant motion in favor of Kerek does not preclude the parties from addressing the issue of cause in a later motion, or, if necessary, at trial. *See Messina v. Lowe's Home Centers, Inc.*, No. 07-1214, 2007 WL 1870170, at *3 (E.D. La. June 26, 2007) (granting motion for partial summary judgment "as to the applicability of the Wage Payment Act and the public policy considerations of the forefeiture clauses in the bonus plan" but denying motion for partial summary judgment "insofar as it implicates . . . disputed issues of material fact as to the basis for [the plaintiff's] termination.").

There also remains a dispute as to whether the parties entered into the 2016 Bonus Plan. The Court has not been provided an executed version of that document and cannot conclude, as a matter of summary judgment, the particular consequences of such agreement should its terms have been satisfied. That determination is likewise subject to resolution at trial.

## III. Conclusion

Based on the foregoing, because there is no dispute that Kerek worked the entirety of the performance period stipulated in the 2016 Bonus Plan prior to his termination on January 6,

---

[3] For fixed term contracts, the Louisiana Civil Code provides that an employer may not dismiss an employee without cause, *i.e.*, "any serious ground of complaint." La. Civ. Code art. 2749 ("If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived."); *see also Read*, 165 So. 3d at 887 ("Under a limited term contract the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause."). Louisiana jurisprudence provides that when terminating a fixed term employment contract, "an employer must show *good* or *just cause* for terminating the employee during that term." *Reyes-Silva v. Drillchem Drilling Sols., LLC*, 56 So. 3d 1173, 1178 (La. App. 3rd Cir. 2011) (emphasis in the original) (citations omitted).

2017, and because payment under that plan was conditioned only on continued employment, the provision in Crawford Electric Company Inc.'s bonus plan that requires an employee to be employed when the bonus is paid out the following year is not enforceable in light of Louisiana public policy, should that bonus plan be found to apply in this case.

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (R. Doc. 25) is **GRANTED**. The provision in Crawford Electric Company, Inc.'s bonus plan that requires an employee, who works the entire bonus period, to be employed by the company when the bonus is paid out the following year, violates Louisiana public policy and is not enforceable.

Signed in Baton Rouge, Louisiana, on February 20, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**