UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAMAIN KEREK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-76-RLB** |
| **CRAWFORD ELECTRIC SUPPLY COMPANY, INC.** | **CONSENT CASE** |

## ORDER

Before the Court is Defendant's Motion to Exclude Expert Testimony of Ralph Stephens. (R. Doc. 111).[1] The motion is opposed. (R. Doc. 126).[2] Plaintiff has submitted a Supplemental Memorandum. (R. Doc. 157).[3]

Also before the Court is Defendant's Motion for Summary Judgment. (R. Doc. 113).[4] The motion is opposed. (R. Doc. 122).[5] Defendant filed a Reply. (R. Doc. 140). Plaintiff has filed a Supplemental Memorandum in Opposition. (R. Doc 145).[6]

**I.     Background**

On or about December 28, 2017, Damain Kerek ("Plaintiff" or "Kerek") initiated this action against Crawford Electric Supply Company, Inc. ("Defendant" or "Crawford") for wages that were allegedly owed to him under Crawford's 2016 Bonus Plan. (R. Doc. 1-1 at 3-7, "Petition"). Crawford subsequently removed the action on the basis that there is diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1).

---

[1] Some exhibits are filed under seal. (R. Docs. 119, 137).
[2] Some exhibits are filed under seal. (R. Doc. 129).
[3] The exhibits are filed under seal. (R. Doc. 158).
[4] Some exhibits are filed under seal. (R. Doc. 120, 139).
[5] Some exhibits are filed under seal. (R. Doc. 125).
[6] The exhibits are filed under seal. (R. Doc. 146).

Kerek alleges that throughout his employment with Crawford he participated in an annual "Bonus Plan" under which he generally received "around 30% or more of his total annual compensation." (Petition ¶¶ 3-4). Kerek further alleges that he worked the entirety of the 2016 Bonus Plan's performance year, which began on January 1, 2016 and expired on December 31, 2016, making him eligible to receive payment of his wages under the 2016 Bonus Plan. (Petition ¶ 5). Kerek further alleges that after his employment was terminated, Crawford advised him that it was refusing payment under the 2016 Bonus Plan, among other reasons, because Kerek "did not meet the sales numbers and expectations of the Plan." (Petition ¶ 14).

Crawford has submitted an unsigned copy of the 2016 Bonus Plan, which provides, in relevant part, that "All bonus payouts are predicated upon Branch/Crawford meeting defined financial targets. In the event that the Branch/Crawford targets are not met, all bonus payouts will be at the discretion of the Executive Management Team. ** No bonus payments will be made in any category if a minimum 3% ROS [return on sales] is not achieved.**." (R. Doc. 120-1) (under seal). The 2016 Bonus Plan also contains language under the section titled "Participant Signature" stating the following: "I have received a copy of this plan documents and agree to participate within all terms and conditions. My performance criteria & goals for the bonus period have been formally established & satisfactorily conveyed to me." (R. Doc. 120-1) (under seal).

The following facts are undisputed unless stated otherwise.[7] Kerek worked at Crawford from August 2013 to January 6, 2017, as the branch manager for Crawford's location in Geismer, Louisiana (the "Kerek Branch"). Kenny DeLaune ("DeLaune") was the Regional Vice President for the Louisiana Region and was Kerek's supervisor in 2015 until Kerek's

---

[7] These facts are derived from Crawford's Statement of Uncontested Material Facts (R. Doc. 113-2) and Plaintiff's Statement of Material Disputed Facts (R. Doc. 122-4).

termination. In early 2016, Kerek voiced disagreement with the provisions of the 2016 Bonus Plan. Kerek stated in an email dated April 13, 2016, that he "cann[not] continue to sit back, sign the plans and not at least speak up." Christopher Tolle ("Tolle") informed Kerek, however, that the terms of the 2016 Bonus Plan were not changing from what was proposed notwithstanding Kerek's disagreement with the proposed form. DeLaune requested that Kerek sign and return the 2016 Bonus Plan. Kerek asserts that when Tolle and DeLaune said that the terms of the plan were not going to be changed, he signed the plan and handed it to DeLaune while DeLaune was in Kerek's office. Crawford states that it never received a signed 2016 Bonus Plan. Kerek admits that he does not have a copy of the signed 2016 Bonus Plan. Finally, Crawford represented at its deposition that it calculates a branch's ROS by determining the branch's earnings before interest and taxes ("EBIT"), less all expenses, divided by the branch's net sales.

Crawford now moves to exclude the testimony of Kerek's expert, Ralph Stephens, on the basis that his testimony is unreliable in light of his accounting methodologies. (R. Doc. 111). Central to the dispute is the application of costs associated to Crawford's "parallel wire program" started in July 2016 and run from Kerek's branch. Crawford argues that it made a business decision that the costs associated to the program would be allocated to Kerek's branch, as well as offsetting revenue and profit related to the parallel wire program even if sales were made by other branches. Kerek asserts that the parallel wire product "is primarily marketed for use in commercial and residential applications," and Kerek's branch, which primarily focused on industrial customers, "would not be selling any parallel wire products to its customers." (R. Doc. 126 at 2). Crawford acknowledges that the primary use for parallel wire is commercial applications. (R. Doc. 111-1 at 2). Crawford argues, however, that Mr. Stephens improperly reallocated certain expenses related to the parallel wire program for the sole purpose of raising

3

Kerek's ROS to reach the 3% requirement for the 2016 bonus. In opposition, Kerek argues that Mr. Stephens' methodologies are reliable, that he properly relied upon Kerek's testimony, and that the removal of employee salaries, rent and real estate taxes, and indirect general expenses related to the parallel wire program from the calculation of Kerek's ROS is appropriate because those expenses far exceeded any revenue and profits received from the program. (R. Doc. 126).

Crawford also seeks summary judgment on the basis that Kerek's branch failed to achieve 3% ROS and Kerek cannot prove that the 2016 Bonus Plan was a term of his employment because he cannot produce a signed copy of the 2016 Bonus Plan. (R. Doc. 113). In opposition, Kerek argues that his branch in fact achieved a 3.18% ROS as calculated by Mr. Stephens. (R. Doc. 122 at 1-2). Kerek further argues, among other things, that there was no requirement for him to sign the 2016 Bonus Plan in order to be entitled to the bonus, that he in fact signed the 2016 Bonus Plan, and that the Crawford's post-termination communications acknowledge that Kerek was subject to the 2016 Bonus Plan. (R. Doc. 112 at 2-6).

## II. Law and Analysis

### A. Crawford's Motion to Exclude Expert Testimony

#### i. Legal Standards

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education" is permitted to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 is effectively a codification of the United States Supreme Court's opinion in *Daubert*, in which the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that it is both "reliable" and "relevant." *Daubert v. Merrell Dowell Pharm., Inc.*, 509 U.S. 579, 589 (1993).  This gatekeeping role extends to non-scientific expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

The objective of the gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.  The *Daubert* court provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. *See Daubert*, 509 U.S. 579, 592-594.  These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. *See id.* at 593-94.

The party offering the expert witness bears the burden of proving that his proposed expert testimony is admissible. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).  The use of expert testimony is only proper if it will assist the trier of fact. *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990).  Under Rule 702, expert testimony should be excluded if the court finds that the trier of fact "could adeptly assess [the] situation using only their common experience and knowledge." *Id.* at 450.  The *Daubert* factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-

specific inquiry. *See Kumho Tire*, 526 U.S. at 138, 119; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

### ii. Analysis

Plaintiff's expert, Ralph J. Stephens, produced an expert report dated July 23, 2018. (R. Doc. 119-3) (sealed). Mr. Stephens is a Certified Public Accountant, accredited in business valuation, certified in financial forensics, has a bachelor's degree in accounting and a juris doctor, has practiced accounting for almost 38 years, and has testified and been qualified as an expert in numerous cases. (R. Doc. 119-3 at 23-26). There is no dispute that Mr. Stephens has the knowledge, skill, experience, training, or education to provide expert testimony in the field of accounting. The sole dispute is whether Mr. Stephens' expert testimony is reliable in light of his methodology.

In his report, Mr. Stephens "performed certain adjustments" to the financial statement for Kerek's branch "to reallocate the estimated 2016 financial impacts attributable to the parallel wire operations and associated [servicing] costs incurred" by Kerek's branch, which focused in industrial applications. (R. Doc. 119-3 at 11). Mr. Stephens opines that he made these adjustments on the basis that the "parallel wire inventory equipment and servicing costs significantly impacted the 2016 financial performance" of Kerek's branch as "the parallel wire was not intended to industrial consumer applications." (R. Doc. 119-3 at 11). In part, Mr. Stephens relied on Dalaune's deposition testimony that Kerek's branch should not be charged for costs related to the parallel wire program and that he had considered whether a "proxy" branch for allocating the parallel wire costs should be created for accounting purposes. (R. Doc. 119-3 at 6; *see* R. Doc. 129).

Crawford suggests that Mr. Stephens' improperly removed costs associated with the parallel wire program, including estimated labor costs for servicing, salaries for unloading, receiving, stocking and training, estimated rent expense, estimated real estate taxes, estimated indirect salary expenses, and estimated indirect general expenses. (R. Doc. 111-1 at 3-5). Crawford argues that Mr. Stephens' opinions regarding the removal of these categories are unreliable because they are based on speculation, false assumptions, and calculation errors. (R. Doc. 111-1 at 7-13).

The Court finds no basis for excluding Mr. Stephen's testimony on the basis that his methodology is unreliable.[8] Mr. Stephens has relied upon financial statements and testimony by current and former employees of Crawford. There is no basis for excluding his testimony in light of the sources of information relied upon. *See Alonso v. Westcoast Corp.*, No. 13-563, 2015 WL 9076404, at *4 (M.D. La. Dec. 16, 2015) ("[I]t is not unusual for a CPA to review and prepare summaries and calculations of construction and business expenses from a company's underlying accounting and business records."); *Mac Sales v. E.I. Dupont De Nemours & Co.*, No. 89-4571, 1992 WL 396864, at *5 (E.D. La. Dec. 18, 1992) ("Company records and statements by company personnel are types of data reasonably relied upon by accountants, and opinions based on those types of information are typically admissible under Rule 703.").

Crawford has not demonstrated that Mr. Stephens' methodologies have significantly deviated from the standard accounting practices for attributing costs and expenses. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be

---

[8] In its conclusion, Crawford states that it is moving to exclude Mr. Stephen's expert testimony on the basis that "it is unreliable, irrelevant and prejudicial." (R. Doc. 111-1 at 13). Crawford raises no specific arguments with respect to relevance or prejudice, and the Court finds no basis for excluding Mr. Stephen's expert testimony for these reasons. Mr. Stephen's testimony is relevant to whether Kerek's branch satisfied the appropriate metrics with respect to the bonus. Crawford will have the opportunity to cross-exam Mr. Stephens and to provide its own expert testimony to address any prejudice.

7

assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Lefore County, Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)). "Matters left for the jury's consideration include an expert's alleged miscalculations, erroneous assumptions, and inconsistencies to which a party objects." *Alonso*, 2015 WL 9076404, at *4.

The Court has reviewed Crawford's more specific arguments with respect to Mr. Stephens's opinions regarding the removal of certain costs associated to the parallel wire program. These challenges to Mr. Stephens' opinions concern his calculations and assumptions with respect to how costs are (or should be) allocated with respect to the parallel wire program and are best addressed through cross-examination. For example, Crawford argues that Mr. Stephens "wrongly assumed" that certain employees "would not be paid in the absence of the parallel wire program" and relies on its own experts' opinions with respect to the assumptions. (R. Doc. 111-1 at 8-9). Crawford will have the opportunity to challenge this assumption, and any other assumptions made by Mr. Stephens' in support of his opinions, through cross-examination. The Court finds no basis for excluding his testimony on the basis of unreliable methodology.

### B. Crawford's Motion for Summary Judgment

#### i. Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with

"specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Id.* at 323.

Furthermore, only evidence that is competent, or admissible, may be used to support summary judgment. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). "'[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Serna v. Law Office of Joseph Onwuteaka*, P.C., 614 F. App'x 146, 153 (5th Cir. 2015) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

### ii. The 3% ROS Requirement

Crawford seeks summary judgment on the basis that it "calculates a branch's ROS by determine the branch's EBIT, less all expenses, divided by the branch's net sales" and, using this formula, has calculated the ROS for Kerek's branch to be 2.86%, well below the required 3% requirement. (R. Doc. 113-1 at 2). As discussed above, the Court will not exclude Mr. Stephen's opinion that Kerek obtained a 3.18% ROS when adjustments are made pertaining to the parallel

wire program. It is for the trier of fact to determine which of these competing computations is applicable.

As there is a genuine issue of material fact with respect to whether Kerek satisfied the 3% ROS requirement, summary judgment with respect to this requirement in the 2016 Bonus Plan is inappropriate.

### iii. The Signature Requirement

Crawford argues that summary judgment is also appropriate because neither party has a signed copy of the 2016 Bonus Plan. (R. Doc. 113-1 at 5-7). In short, Crawford asserts that because Kerek cannot prove the existence of a signed bonus plan, he must prove the existence of an oral contract with respect to the bonus plan through corroborating circumstances other than his own testimony, and cannot do so. (R. Doc. 113-1 at 6).

Kerek raises various arguments in opposition. First, Kerek argues that he was not required to sign the bonus plan because he signed an employment contract in 2013 providing that he was entitled to an annual bonus without any additional requirement that Kerek sign an annual bonus plan each year. (R. Doc. 122; *see* R. Doc. 122-2). Second, Kerek argues that Crawford's arguments with respect to the unsigned contract amount to an affirmative defense that has been waived by failure to plead. (R. Doc. 122 at 4). Third, Kerek argues that he in fact signed the 2016 Bonus Plan and gave it to DeLaune. (R. Doc. 122 at 2-3). Finally, Kerek argues that corroborating evidence in the record, including the signed employment contract, DeLaune's lack of denial that Kerek signed the 2016 Bonus Plan, Crawford's monthly accrual of Kerek's bonus on the 2016 monthly financial statements, and Crawford's post-termination communications acknowledging that Kerek was subject to the 2016 Bonus Plan (though not entitled to a bonus in

light of his branch's performance) support a finding that Kerek was subject to the 2016 Bonus Plan. (R. Doc. 122 at 2-8).

Having considered the foregoing, including the evidence submitted in support of Kerek's opposition, the Court concludes that there is a genuine issue of material fact with respect to whether Kerek signed the 2016 Bonus Plan or the parties otherwise entered into an oral argument for the 2016 Bonus Plan.[9] Accordingly, summary judgment is unavailable on this issue.

## III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Exclude Expert Testimony of Ralph Stephens (R. Doc. 111) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 113) is **DENIED.**

The Court will set a trial date and associated deadlines by separate order.

Signed in Baton Rouge, Louisiana, on July 16, 2019.

　　　　　　　　　　　　　　　　　　　　　
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] The Court does not reach the issues raised in Kerek's opposition with respect to whether the existence of a signed 2013 employment contract requires enforcement of an unsigned 2016 bonus plan or whether Crawford has waived an affirmative defense with respect to the 2016 bonus plan. Kerek did not move for summary judgment on these issues. It further appears that Kerek is raising those arguments solely to establish corroborating evidence in support of a finding that Kerek either signed the 2016 bonus plan or the parties entered into an oral agreement with respect to the bonus plan.